IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TYSHEE FEATHERSTONE,<br><br>  Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO, and CHICAGO POLICE SERGEANT, JAMES SAJDAK, #1058,<br><br><br><br>  Defendants. | <br><br><br><br><br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

NOW COMES Plaintiff TYSHEE FEATHERSTONE, by and through her attorneys Christopher Smith Trial Group, LLC, and complaining of Defendants CITY OF CHICAGO and CHICAGO POLICE SERGEANT, JAMES SAJDAK, #1058 as follows:

### INTRODUCTION

1. This action is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

### JURISDICTION & VENUE

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. Sections 1331 and 1367, and venue is proper under 28 U.S.C. Section 1391(b). On information and belief, all parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within the district.

### THE PARTIES

3. Plaintiff, TYSHEE FEATHERSTONE, is a resident of the City of Chicago in the County of Cook, Illinois.

4. Defendant James Sajdak was at the time of this occurrence a City of Chicago Police Officer. He engaged in the conduct complained of while in the scope of his employment and under color of law. He is sued in his individual capacity.

5. Defendant City of Chicago ("City") is a municipal corporation under the laws of the State of Illinois that operates the City of Chicago Police Department, and, at all times relevant to the events complained of herein, was the employer of Defendant Officers. The City is sued pursuant to the doctrine of *respondeat superior* on the pendant State law claims.

## BACKGROUND FACTS

6. Plaintiff is a transgender female. Transgender is when the state of one's gender identity does not match one's assigned sex. Therefore, while Plaintiff's assigned sex at birth was male, Plaintiff identifies as a female.

7. Tyshee was in the area of Fifth and Cicero on the evening of March 5, 2019.

8. A Chicago Police Officer wearing a white uniform approached her in his marked SUV police vehicle.

9. The Defendant Officer now known as Sergeant Sajdak asked her "What was she doing here?"

10. The Sergeant told her told her that she had no choice except to perform a sex act on him, "because that's what you do or you will go to jail."

11. The Sergeant ordered Tyshee into the front passenger seat of his police vehicle.

12. Once Tyshee was in the police SUV the Sergeant drove to a secluded area near the intersection of Kostner and Lexington overlooking the expressway.

13. Sajdak said he had not seen Tyshee out there (where he coerced Tyshee into his

police vehicle) before. He ordered Tyshee to give him her phone number.

14. Sajdak told Tyshee that he comes out there frequently and that Tyshee would become one of his regulars.

15. Sajdak closed the cover of the police computer between the driver seat and passenger seat.

16. The Sergeant then exposed his penis and demanded that Tyshee perform a sexual act.

17. Tyshee complied out of fear.

18. Sajdak left Tyshee in an alley.

19. Tyshee spit what she believed included his semen into a bottle.

20. A friend took her Rush Hospital shortly after Sajdak sexually assaulted her.

21. Tyshee reported what happened to her at the hospital and gave staff at the hospital the bottle.

22. Defendant Sajdak was relieved of official police duty soon after this incident.

23. Defendant Sajdak is a white male who is approximately 61 years old.

**Defendant Sajdak's History of Misconduct**

24. Defendant Sajdak has an extensive history of misconduct as a Chicago Police Officer. The complaints against him are known as complaint register files or "CRs".

25. As of 2019, Defendant Sajdak had at least 44 CRs.

26. On information and belief, the CRs filed against Defendant Sajdak were investigated by various entities under the control of the City of Chicago: The Office of Professional Standards ("OPS"), the Independent Police Review Authority ("IPRA"), the Civilian Office of Police Accountability ("COPA"), the Bureau of Internal Affairs ("BIA"), and

the Internal Affairs Department ("IAD").

27. Defendant City knew or was recklessly blind to Defendant Sajdak's pattern of misconduct.

28. In 1997, Defendant City sustained a complaint involving criminal misconduct against Defendant Sajdak in connection with the sale and/or possession of illegal drugs.

29. Defendant Sajdak was only suspended for 30 days as a result of this sustained CR and remained a Chicago police officer.

30. The 30-day suspension was a lenient punishment even in Defendant City's broken police disciplinary system.

31. Sajdak was not referred for criminal prosecution.

32. Between 1997 and 2012, Sajdak amassed 34 more citizen misconduct complaints.

33. Despite his record as a threat to civilians and as a liability to the department, in 2012, Defendant City promoted Defendant Sajdak to the coveted rank of sergeant.

34. In 2013, Defendant Sajdak was named as a defendant in a civil rights lawsuit; *Hondras v. City of Chicago, et al.*, 13 CV 1846.

35. The *Hondras* lawsuit arose out of an incident on July 14, 2011, in which a young woman named Tiffany Hondras was taken to the 11th District police station after being pulled over in a car driven by her boyfriend.

36. At the police station, Defendant Sajdak grabbed Hondras, handcuffed her, and took her into a secure area. To punish Hondras's boyfriend for challenging him, Defendant Sajdak ordered that Hondras be stripped searched.

4

37. Hondras was subjected to a full strip search in the bathroom of the police station; she was told to pull down her pants and underwear, to squat and cough multiple times, and to pull apart her buttocks and genitalia.

38. Nothing illegal was ever found on Hondras's person and she was released without charges.

39. In September 2015, the City of Chicago settled the *Hondras* lawsuit for $220,000.00

40. Defendant Sajdak was not re-trained or disciplined as a result of the *Hondras* lawsuit or the incident that gave rise to it.

41. On information and belief, Defendant Sajdak has also physically and/or sexually abused and/or harassed other individuals.

42. Prior to March of 2019, Defendant City knew or should have known that Defendant Sajdak had demonstrated an obvious pattern of misconduct.

43. In 2019, Defendant Sajdak was named as a defendant in a civil rights lawsuit entitled Perry *v. City of Chicago, et al.*, 13 CV 1846.

44. The *Perry* lawsuit arose out of an incident in September of 2016, in which a uniformed Sajdak stopped Geneva Harris's car.

45. Defendant Sajdak pulled up next to her vehicle and ordered her to follow him into an abandoned parking lot at or near the intersection of Homan and Roosevelt.

46. Defendant Sajdak then masturbated in front of Ms. Harris between their two parked cars, forcing her to watch.

47. When he was finished, Defendant Sajdak released Harris without issuing her any tickets and without charging her with any crime.

5

48. After this incident, on multiple occasions between September 2016 and July 3, 2019, Defendant Sajdak, while driving his police vehicle, harassed Ms. Harris by following her while she was driving.

49. Ms. Harris reported Defendant Sajdak's misconduct to a Chicago police detective.

### The City's Deliberate Indifference

50. At the time of the incident, the actions of Defendant Sajdak, as alleged above, occurred pursuant to one or more interrelated *de facto* policies, practices and/or customs of the City of Chicago and/or the Chicago Police Department.

51. At the time of the incident, the Defendant City of Chicago and its police department had interrelated *de facto* policies, practices, and customs which included, inter alia, the failure to properly, discipline, monitor, investigate, and control its police officers regarding their interactions with and treatment of women, transgender and gender-nonconforming people.

52. At the time of the incident, the Defendant City of Chicago and its police department had interrelated *de facto* policies, practices, and customs which included, inter alia, the failure to properly, discipline, monitor, investigate, and control its police officers with regard to officers who are accused of sexual assault.

53. The *de facto* policies, practices and customs of failing to monitor, discipline, and control Chicago police officers allow such officers to treat women, transgender and gender non-conforming people in abusive, hostile, threatening, and discriminatory ways in violation of the U.S. Constitution and Illinois law and without fear of repercussion.

54. The *de facto* policies, practices and customs of failing to properly discipline, investigate, and control sexual assault committed by police officers, is a moving force involved in acts of sexual assault committed under color of law, in violation of the U.S. constitution.

55. Specifically, police officers accused of sexual harassment or assault can be confident that the City will not adequately investigate those accusations in earnest and will refuse to recommend appropriate discipline even where the officer has engaged in sexual misconduct constituting an unreasonable seizure in violation of the Fourth Amendment.

56. More broadly the Chicago Police department fails to monitor, supervise, investigate, and properly discipline Officers such as Defendant Sajdak, who have extensive histories of serious misconduct and complaint histories. Much to the contrary, such officers, like Defendant Sajdak, are routinely promoted to supervisory positions themselves. These failures constitute the *de facto* policy of the City of Chicago and the Chicago Police Department.

57. The City has encouraged a *de facto* practice among its officers known as a code of silence. Officer and supervisors who are aware of other officers who commit misconduct, such as Defendant Sajdak, never speak up or report the problem officer.

58. The aforementioned policies, practices and/or customs of failing to discipline, monitor, investigate, and control Chicago police officers proximately caused injury to the Plaintiff in this case, *inter alia*, because Defendant had good reason to believe that his misconduct would not be revealed or reported by fellow officers or their supervisors, that their denials would go unchallenged by these supervisors and fellow officers, and that they were effectively immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional and illegal conduct.

59. But for the belief that he would be protected by fellow officers, supervisors, the Chicago Police Department and/or the City of Chicago, from serious career or even criminal consequences as a result of his misconduct, Defendant Sajdak would not have engaged in the conduct that resulted in the injuries to Plaintiff.

60. Said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference, and encouraged Defendant Sajdak to commit the aforesaid acts against Plaintiff and therefore acted as the moving force and were, separately and together, direct and proximate causes of said constitutional violations, and injuries to Plaintiff.

## COUNT I – 42 U.S.C. § 1983
### Fourth Amendment: Unreasonable Seizure

61. Each Paragraph of this Complaint is incorporated as if restated fully herein.

62. As described in the preceding paragraphs, Defendant Sajdak violated Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure.

63. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

64. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

65. The misconduct described in this Count was undertaken by Defendant Sajdak within the scope of his employment and under color of law such that his employer, City of Chicago, is liable for his actions.

66. The misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Chicago Police Department in the manner described more fully above.

67. As a result of the misconduct described in this Count, Plaintiff has suffered damages, including but not limited to emotional distress and anguish.

### COUNT II – 42 U.S.C. § 1983
### Equal Protection

68. Each Paragraph of this Complaint is incorporated as if fully restated herein.

69. As described more fully above, Defendant Sajdak denied Plaintiff equal protection of the law in violation of her constitutional rights.

70. The misconduct described in this count was motivated by gender animus and constituted purposeful discrimination.

71. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

72. The misconduct described in this Count was undertaken by Defendant Sajdak within the scope of his employment and under color of law such that his employer, City of Chicago, is liable for his actions.

73. The misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Chicago Police Department in the manner described more fully above.

74. As a result of the misconduct described in this Count, Plaintiff has suffered damages, including but not limited to emotional distress and anguish.

### COUNT III – 740 ILCS 82 *et seq.*
### Illinois Gender Violence Act

75. Each Paragraph of this Complaint is fully incorporated as if fully restated herein.

76. As described more fully above, the conduct of Defendant Sajdak toward Plaintiff constituted a physical intrusion of a sexual nature under coercive conditions. Defendant's actions constituted unjustified and offensive physical contact. Defendant's conduct proximately caused

9

Plaintiff's injuries.

77. The misconduct described in this Count was undertaken with malice, was willful and wanton, was recklessly indifferent to the rights of others, and was objectively unreasonable.

78. The misconduct described in this Count was undertaken by Defendant within the scope of his employment and under color of law such that his employer, City of Chicago, is liable for his actions.

79. As a result of the misconduct described in this Count, Plaintiff has suffered damages, including but not limited to emotional distress and anguish.

### COUNT IV – State Law Claim
### Sexual Assault and Battery

80. Each Paragraph of this Complaint is incorporated as if fully restated herein.

81. As described more fully above, the conduct of the Defendant Steward constituted unjustified and offensive physical contact. Defendant's conduct proximately caused Plaintiff's injuries.

82. The misconduct described in this Count was undertaken with malice, was willful and wanton, recklessly indifferent to the rights of others, and objectively unreasonable.

83. The misconduct described in this Count was undertaken by Defendant within the scope of his employment and under color of law such that his employer, the City of Chicago, is liable for his actions.

84. As a result of the misconduct described in this Count, Plaintiff has suffered damages, including but not limited to emotional distress and anguish.

### COUNT V – STATE LAW CLAIM
### Intentional Infliction of Emotional Distress

85. Each Paragraph of this Complaint is incorporated as if fully restated herein

86. As described more fully above, the misconduct of Defendant Sajdak towards Plaintiff was extreme and outrageous.

87. Given the nature of the misconduct, Defendant Sajdak committed the misconduct with knowledge that his actions were likely to cause severe emotional distress towards Plaintiff.

88. As a direct and proximate cause of Defendant Sajdak's misconduct, Plaintiff has suffered severe emotional distress, including emotional anguish, humiliation, fear, and anxiety.

### COUNT VI – STATE LAW CLAIM
### Respondeat Superior

89. Each Paragraph of this Complaint is incorporated as if fully restated herein.

90. In committing the acts alleged in the preceding paragraphs, Defendant Sajdak was a member and agent of the City of Chicago Police Department acting at all relevant times within the scope of his employment.

91. Defendant City of Chicago is liable as principal for all torts committed by its agents.

### COUNT VII – STATE LAW CLAIM
### Indemnification

92. Each of the foregoing paragraphs is incorporated as if fully restated herein.

93. Illinois law requires public entities to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

94. Defendant Sajdak is or was an employee of the City of Chicago Police Department, who acted within the scope of his employment in committing the misconduct described herein.

WHEREFORE, Plaintiff, TYSHEE FEATHERSTONE, respectfully requests that this Court enter judgment in her favor and against Defendants CITY OF CHICAGO and

SERGEANT SAJDAK, awarding compensatory damages and attorneys' fees, as well as punitive damages against Defendant in his individual capacity, as well as any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff, TYSHEE FEATHERSTONE, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

                                                        RESPECTFULLY SUBMITTED,

                                                        /s/ Christopher R. Smith
                                                      One of the Attorneys for Plaintiff